UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

NORTHWESTERN UNIVERSITY,

          Plaintiff,

   v.

KING COUNTY,

          Defendant.

CASE NO. 2:20-cv-01043-JLR-JRC

REPORT AND RECOMMENDATION

NOTED FOR: January 29, 2021

This matter has been referred to the undersigned by the District Court. *See* Dkt. 19. This matter is before the Court on defendant King County's motion to dismiss. *See* Dkt. 14.

Plaintiff Northwestern University brings suit against defendant for the allegedly unauthorized use of plaintiff's trademarks in violation of federal and common law trademark laws, as well as Washington State statutory law. *See* Dkt. 1. Defendant asks this Court to dismiss plaintiff's federal and common law trademark infringement claims with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) because defendant, a municipal corporation, does not use the disputed marks "in commerce," and therefore, plaintiff's claims fail as a matter of law. *See* Dkt.

14, at 6.  Defendant also asserts that plaintiff's claims should be dismissed with prejudice as time-barred and because defendant is immune from suit under Washington State's Consumer Protection Act.  *See id.*  Plaintiff opposes defendant's motion.  *See* Dkt. 21.

Having reviewed the parties' submissions related to defendant's motion to dismiss (Dkts. 14, 21, 22, 27, 28), and having heard oral argument via recorded Zoom hearing on November 24, 2020 (Dkt. 29), the Court finds that plaintiff has sufficiently alleged that defendant uses the contested marks "in commerce" in connection with services that are not uniquely municipal or governmental functions and that defendant's alleged use of the marks is subject to liability under the Lanham Act, 15 U.S.C. § 1125(a) and common law.  The Court further finds that factual issues preclude the dismissal of plaintiff's claims as time-barred at this time.  However, the Court finds that plaintiff has failed to state a claim under RCW 19.86.020 because defendant is a municipal corporation immune from suit under Washington's Consumer Protections Act.

Accordingly, the Court recommends that defendant's motion to dismiss (Dkt. 14) should be granted in part and denied in part and that plaintiff's claims under RCW 19.86.020 should be dismissed with prejudice.

**REQUEST FOR JUDICIAL NOTICE**

As an initial matter, defendant requests that the Court take judicial notice of several public records documents referenced throughout its motion to dismiss, some of which are not referenced in or attached to plaintiff's complaint.  Dkt. 22, at 6–8 (citing Dkt. 14, at 7–8 regarding Ordinance No. 17304; King County Proposition No. 1; and King County's archived website).  Plaintiff opposes defendant's request for judicial notice on the ground that defendant did not make the request in its motion to dismiss.  *See* Dkt. 24, at 2.

Generally, a district court may not consider material beyond the complaint in ruling on a Rule 12(b)(6) motion to dismiss. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). However, there are limited exceptions to this rule: (1) a court may consider material properly submitted as a part of the complaint; (2) a court may consider documents not physically attached to the pleading if the contents are alleged in the complaint and no party questions the authenticity; and (3) under Federal Rule of Evidence 201, a court may take judicial notice of matters of public record. *Id*. at 688–89. Accordingly, "a court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment. But a court cannot take judicial notice of disputed facts contained in such public records." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (internal citations omitted). The Ninth Circuit has cautioned that "the unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery." *Id.* at 998–99.

In this case, although the Court may *sua sponte* take judicial notice of matters of public record (*see* Fed. R. Evid. 201(c)(1)), the Court declines to do so because defendant appears to offer the public record documents as a competing theory against plaintiff's complaint on facts that are disputed (*e.g.*, when plaintiff allegedly knew or should have known that defendant was actually using the contested marks in commerce or in trade). *Khoja*, 899 F.3d at 998–99. Further, it is not necessary for the Court to take judicial notice of defendant's proffered public records documents in order to resolve the issues presented in the motion to dismiss.

Accordingly, the Court denies defendant's request to take judicial notice of the proffered public records documents.

**REQUEST TO STRIKE**

Pursuant to Local Civil Rule ("LCR") 7(g), plaintiff requests that the Court strike one of defendant's arguments as improperly raised in its reply brief. *See* Dkts. 23; 24, at 2; LCR 7(g) (a party may request "to strike material contained in or attached to a reply brief."). Plaintiff asserts that defendant argues for the first time on reply that plaintiff failed to allege sufficient facts to support that defendant's use of the contested marks is "in commerce." *See* Dkt. 24, at 2.

Generally, the Court does not consider arguments that a moving party raises for the first time in a reply brief. *See Kische USA LLC v. Simsek*, No. C16-0168JLR, 2017 WL 698790, at *3 n. 3 (W.D. Wash. Feb. 22, 2017) (citing *Coos Cty. Bd. Of Comm'rs v. Kempthorne*, 531 F.3d 792, 812 n. 16 (9th Cir. 2008)) (remaining citations omitted). "The court adheres to this rule because arguments raised for the first time in reply deprive the opposing party of its chance to respond." *Id.* (internal quotation omitted).

In this case, the Court agrees with plaintiff that defendant improperly raised its "failure to plead sufficient facts" argument for the first time in its reply brief. *Compare* Dkt. 14, at 13 (explicitly declining to address plaintiff's "*Iqbal/Twombly*" pleading deficiencies) *with* Dkt. 22, at 4–5 (arguing that plaintiff fails to plead sufficient facts to establish defendant's use of the contested marks "in commerce"). However, while the Court understands plaintiff's objections, the Court chooses to consider defendant's argument on the merits for the sake of judicial economy and because the parties were given an opportunity to address this issue during oral argument on the motion to dismiss. *See Contreras v. JPMorgan Chase*, No. EDCV 14-01145 JGB, 2014 WL 5786244, at *4 (C.D. Cal. Nov. 6, 2014) (citations omitted); *see also Nat'l City Bank, N.A. v. Prime Lending, Inc.*, No. CV-10-034-EFS, 2010 WL 2854247, at *2 (E.D. Wash. July 19, 2010) ("Judicial economy favors ignoring the motions' technical deficiencies.").

1    Accordingly, the Court denies plaintiff's request to strike pursuant to LCR 7(g) and will

2    address the merits of defendant's argument below. *See infra*, Section II.

## BACKGROUND

4    Plaintiff initiated this trademark infringement suit in July 2020, alleging that defendant

5    impermissibly used plaintiff's marks "Children and Family Justice Center" and "CFJC" in

6    violation of statutory and common law trademark and unfair competition laws. *See* Dkt. 1.

7    Plaintiff alleges that it has been using the marks "Children and Family Justice Center" and

8    "CFJC" in connection with various juvenile-justice services since 1992 and that the marks have a

9    "national footprint," including in Washington State and King County. *See id.* at 3–5.

10    Plaintiff alleges that in "late 2016," it learned that defendant was "contemplating"

11    naming its new juvenile detention facility ("New Facility") the "Children in Family Justice

12    Center." Dkt. 1, at 5. Plaintiff further alleges that on or around February 5, 2020, defendant

13    announced the opening of the New Facility, calling it the "Patricia H. Clark Children and Family

14    Justice Center," or "CFJC." *Id.* at 6. Specifically, plaintiff alleges that "[i]n addition to juvenile

15    detention services, [d]efendant offers, intends to offer, or intends to house other organizations

16    that offer various juvenile and juvenile-justice-related services, including detention alternatives,

17    family services, and other social services for youth and their families" under the "Children and

18    Family Justice Center" and "CFJC" marks (collectively the "Contested Marks"). *Id.* Plaintiff

19    further alleges that defendant "repeatedly refers to the New Facility" under the Contested Marks

20    on defendant's website. *See id.* (citing Ex. 5, at 40–43).

21    Plaintiff alleges that although it contacted defendant in 2016 and 2020 objecting to

22    defendant's use of the Contested Marks, defendant has continued to use the Contested Marks in

23    connection with the New Facility's alleged services without plaintiff's authorization. *See* Dkt. 1,

24

at 5–7 (citing Ex. 4 at 38; Ex. 6 at 45–48; Ex. 7 at 50–51).  Plaintiff alleges that defendant's unauthorized use of the Contested Marks in connection with services offered at the New Facility is a "deliberate attempt to trade on the valuable trademark rights, goodwill, and consumer trust established by" plaintiff in the Contested Marks.  Dkt. 1, at 7.

Based on the forgoing, plaintiff alleges that defendant's conduct constitutes false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125(a); unfair methods of competition and unfair or deceptive acts or practices in violation of the Unfair and Deceptive Practices Act, RCW 19.86.020; and common law trademark infringement and unfair competition.  *See id.* at 7–9.  Plaintiff requests injunctive relief enjoining defendant's use of the Contested Marks and reasonable attorneys' fees and costs of this action.  *Id.* at 9–10.

## MOTION TO DISMISS STANDARD

When considering a motion to dismiss under Rule 12(b)(6), the court construes the complaint in the light most favorable to the nonmoving party.  *Livid Holdings, Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).  To avoid dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554 (2007).  Where, however, the plaintiff fails to "nudge[] [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed."  *Id.* at 570.  A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A court must accept as true all factual allegations—but not legal conclusions—when reviewing whether a complaint survives a motion to dismiss under Rule 12(b)(6).  *See id.*

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*  A court may dismiss a complaint as a matter of law if it lacks a cognizable legal theory or states insufficient facts under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

## DISCUSSION

### I.    Defendant's "Use in Commerce" as a Matter of Law

Defendant first argues that Count I (false designation of origin under 15 U.S.C. § 1125(a)) and Count III (common law trademark infringement and unfair competition) of the complaint (Dkt. 1, at 7–9) should be dismissed with prejudice because defendant does not engage in commerce, and its alleged use of the Contested Marks is not "use in commerce" as a matter of law.  Dkt. 14, at 10–11, 14–15.  As discussed below, the Court disagrees.

In order to state a claim of false designation of origin under the Lanham Act, a plaintiff must allege that the defendant (1) used in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or misrepresents the characteristics of the defendant's or another person's goods or services. *Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 902 (9th Cir. 2007) (citing 15 U.S.C. § 1125(a)); *see Lahoti v. Vericheck, Inc.*, 708 F. Supp. 2d 1150, 1167 (W.D. Wash. 2010) (applying the same claim elements to statutory and common law trademark infringement).

The Lanham Act defines the term "commerce" broadly as "all commerce which may lawfully be regulated by Congress."  15 U.S.C. § 1127.  The Ninth Circuit has stated that "use in commerce" indicates actions "made to promote any competing service or reap any commercial benefit whatsoever." *Freecycle Network, Inc.*, 505 F.3d at 903 (citing 15 U.S.C. § 1127; *Mattel,*

1  *Inc. v. MCA Records, Inc.*, 296 F.3d 894, 903 (9th Cir. 2002)). However, liability under the

2  Lanham Act is not limited to solely commercial or for-profit activity. *See, e.g.*, *Bosley Med.*

3  *Inst., Inc. v. Kremer*, 403 F.3d 672, 679 (9th Cir. 2005) (noting that "the use in connection with

4  the sale of goods and services requirement of the Lanham Act does not require any actual *sale* of

5  goods and services" (internal citation omitted, emphasis in original)); *United We Stand Am., Inc.*

6  *v. United We Stand, Am. New York, Inc.*, 128 F.3d 86, 90 (2d Cir. 1997) ("The Lanham Act has

7  thus been applied to defendants furnishing a wide variety of non-commercial public and civic

8  benefits.").

9      In this case, plaintiff alleges that defendant uses the Contested Marks in commerce in

10  offering "juvenile detention services" and in offering or housing "other organizations that offer

11  various juvenile and juvenile-justice-related services, including detention alternatives, family

12  services, and other social services for youth and their families." Dkt. 1, at 6. Plaintiff alleges

13  that defendant's actions constitute use of the Contested Marks in "interstate commerce." *Id.* at 7.

14      Defendant argues that the services as alleged in the complaint are not commercial in

15  nature. *See* Dkt. 14, at 14 (citing *Freecycle Network, Inc.*, 505 F.3d at 903; Dkt. 1, at 6).

16  However, as noted above, a defendant need not engage in for-profit services in order to be held

17  liable under the Lanham Act. *See United We Stand Am., Inc.*, 128 F.3d at 90, 92. Thus, although

18  defendant may not "sell" or offer the alleged services for commercial benefit, this does not alone

19  mean that defendant's alleged use of the Contested Marks as related to the alleged services could

20  not constitute "use in commerce" under the Lanham Act. *See id.*

21      Defendant also argues that its alleged "services are offered as a part of a 'community-

22  based correctional facility and program,' which the Washington Supreme Court has recognized

23  to be a 'uniquely government' and 'exclusive state function.'" Dkt. 14, at 14 (citing

24

REPORT AND RECOMMENDATION - 8

*Woodland Park Zoo*, 387 P.3d 690, 699 n. 8 (Wash 2017)). Defendant concludes that because its services are uniquely governmental and exclusive state functions, these services are not subject to federal regulation by way of the Commerce Clause, and therefore, its use of the Contested Marks cannot constitute "use in commerce" as a matter of law. Dkt 14, at 14.

However, the Washington Supreme Court in *Fortang* did not address whether any party was engaged in commerce for purposes of the Lanham Act, nor did it discuss whether any of the cited municipal activities were subject to federal regulation under the Commerce Clause. *See* 387 P.3d at 698–99 (addressing whether a private party was performing "core" governmental functions for the purposes of a claim under Washington's Public Records Act). Further still, the Lanham Act explicitly states that "[a]ny State, and any such instrumentality [of a State] . . . shall be subject to the provisions of [the Lanham Act] in the same manner and to the same extent as any nongovernmental entity." 15 U.S.C. § 1125(a)(2). The Lanham Act makes no special exception for governmental or municipal actors that use a mark in commerce in connection with government-related services. *See id.* at §§ 1125(a)(2), 1127 (defining "use in commerce"); *see also Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 546–47 (1985) (rejecting the principle that state immunity from federal regulation under the Commerce Clause turns on whether a particular governmental function is "integral" or "traditional.").

Further, plaintiff specifically alleges that defendant uses the Contested Marks in relation to services offered "*in addition* to juvenile detention services," including "detention alternatives, family services, and other social services for youth and their families." Dkt. 1, at 6 (emphasis added). Plaintiff also cites to defendant's own website showing defendant's promotion of the alleged services in connection with the Contested Marks. *See* Dkt. 1, 40–42 ("The new facility

will provide a respectful and supportive environment to link even more youth and families—court-involved or not—with services and non-profit organizations in their own communities.").

Defendant's alleged services related to "family services[] and other social services for youth and their families" are not uniquely and exclusively governmental functions. Dkt. 1, at 6. Indeed, during oral argument on the motion to dismiss, defendant conceded that a *non*-municipal or *non*-governmental entity performing the alleged services would be subject to liability under the Lanham Act. Despite this concession, defendant argues that the Court should frame all of the alleged services as "types" of juvenile detention services, which are uniquely governmental functions. *See* Dkt. 27, at 4. But that is not what plaintiff alleges in the complaint. Plaintiff alleges that defendant uses the Contested Marks in relation to juvenile detention services, family services, *and* other social services. Dkt. 1, at 6. In order to accept defendant's argument, the Court would have to construe facts alleged in the complaint against plaintiff, which is not appropriate on a motion to dismiss. *See Livid Holdings, Ltd.*, 416 F.3d at 946.

In sum, accepting the allegations in the complaint as true and in the light most favorable to plaintiff, the Court finds that plaintiff has sufficiently alleged that defendant uses the Contested Marks in connection with services that are not uniquely governmental functions and that are subject to liability under the Lanham Act and common law. Accordingly, the Court recommends denying defendant's motion to dismiss Counts I and III of the complaint on this ground.

**II.     Factual Allegations Regarding Defendant's "Use in Commerce"**

As noted above (*see supra*, Plaintiff's Request to Strike), defendant also argues that Counts I and III of the complaint should be dismissed because plaintiff fails to plead sufficient

1  facts showing that defendant's use of the Contested Marks is "use in commerce." Dkt. 22, at 3–
2  5. The Court disagrees, as discussed below.

3  Under the Lanham Act, "use in commerce" means "the bona fide use of a mark in the
4  ordinary course of trade, and not made merely to reserve a right in a mark. For the purposes of
5  [15 U.S.C. § 1125(a)], a mark shall be deemed to be in use in commerce . . . on services when it
6  is used or displayed in the sale or advertising of services and the services are rendered in
7  commerce, or the services are rendered in more than one State . . . and the person rendering the
8  services is engaged in commerce in connection with the services." 15 U.S.C. § 1127.

9  Here, plaintiff alleges that its use of the Contested Marks is nationwide, including use of
10 the marks in King County, Washington. *See* Dkt. 1, at 3–5. Plaintiff further alleges that
11 defendant uses the Contested Marks in "interstate commerce" in connection with the alleged
12 services offered at the New Facility, including use of the marks on defendant's website. *See id.*
13 at 6–8 (citing Ex. 5 at 40–43; *see also* Ex. 7, at 50–51 (noting defendant's continued use of the
14 Contested Marks)). Plaintiff further alleges that defendant's use of the Contested Marks in
15 connection with the New Facility is "likely to cause confusion" and has caused or is likely to
16 cause "significant harm to [plaintiff]'s reputation and hard-earned good will and trust." *Id.* at 7.

17 Defendant argues that plaintiff fails to allege facts that defendant uses the Contested
18 Marks in advertising, in the sale of its services, or in connection with services rendered in more
19 than one State. Dkt. 22, at 3. However, as noted above, a defendant need not engage in for-
20 profit services in order to be held liable under the Lanham Act. *See United We Stand Am., Inc.*,
21 128 F.3d at 90. Further, plaintiff's allegations regarding defendant's intrastate use of the
22 Contested Marks is sufficient to establish "use in commerce" because acts of local infringement
23 within one state may jeopardize the good name of plaintiff's service or diminish plaintiff's
24

1  ability to control the use of its marks in interstate commerce.  *See Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117, 120 (9th Cir. 1968); *see also United We Stand Am., Inc.*, 128 F.3d at 93 ("Congress's power to protect a plaintiff's mark used in interstate comme[r]ce necessarily implies the power to regulate a defendant's unauthorized use of the mark within a state's borders."); 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 25:56 (5th Ed. 2020) (discussing local acts that impact interstate commerce).  Therefore, plaintiff's allegations regarding defendant's use of the Contested Marks are sufficient to show that defendant allegedly uses the Contested Marks in commerce.

Additionally, plaintiff's allegations regarding defendant's use of the Contested Marks on defendant's public website further bolster plaintiff's claim that defendant's use of the Contested Marks impacts interstate commerce.  *See Nat'l Grange of the Order of Patrons of Husbandry v. California Guild*, 334 F. Supp. 3d 1057, 1065 (E.D. Cal. 2018) ("Communications made on public websites are made in interstate commerce."  (citing *U.S. v. Sutcliffe*, 505 F.3d 944, 952–53 (9th Cir. 2007)); *see also Iglesia Ni Cristo v. Cayabyab*, No. 18-CV-00561-BLF, 2019 WL 3997474, at *8 (N.D. Cal. Aug. 23, 2019) (noting use of a mark on the Internet meets the interstate commerce requirement but that plaintiff must also allege that the defendant "claims plaintiff's [mark] as its own." (internal quotation omitted)).

Construing the complaint in the light most favorable to plaintiff, the Court finds that plaintiff has sufficiently alleged facts showing that defendant's alleged use of the Contested Marks is "use in commerce" under the Lanham Act.  Accordingly, the Court recommends denying defendant's motion to dismiss Counts I and III of the complaint on this ground.

### III. Time-Bar

Defendant next argues that plaintiff's Count I (false designation of origin under 15 U.S.C. § 1125(a)) and Count III (common law trademark infringement and unfair competition) of the complaint (Dkt. 1, at 7–9) should be dismissed with prejudice because they are time-barred. *See* Dkt. 14, at 15–17. The Court again disagrees, as discussed below.

The Lanham Act has no express statute of limitations. *See Au-Tomotive Gold Inc. v. Volkswagen of Am., Inc.*, 603 F.3d 1133, 1140 (9th Cir. 2010). However, the affirmative defense of laches is a valid defense to Lanham Act and common law trademark infringement claims. *See Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002). "Finding that laches bars a trademark claim is appropriate where the trademark holder knowingly allowed the infringing mark to be used without objection for a lengthy period of time." *Eat Right Foods Ltd. v. Whole Foods Mkt., Inc.*, 880 F.3d 1109, 1115 (9th Cir. 2018) (internal quotation omitted). "To establish that laches bars a claim, a defendant must prove both an unreasonable delay by the plaintiff and prejudice to itself." *Id.* (internal quotation omitted).

In determining whether the defense of laches applies, the Court looks to the most analogous statute of limitations from state law in order to determine whether a plaintiff's filing of suit is timely. *Jarrow Formulas, Inc.*, 304 F.3d at 835. The parties agree that "[t]he closest analogous cause of action in state law is Washington's common law tort of trade name infringement," which provides a three-year statute of limitations. *Oldcaste Precast, Inc. v. Granite Precasting & Concrete, Inc.*, No. C10-322 MJP, 2011 WL 813759, at *4 (W.D. Wash. Mar. 2, 2011) (citing RCW 4.16.080(2); *Jonathan Neil & Assocs., Inc. v. JNA Seattle, Inc.*, No. C06-1455JLR, 2007 WL 788354, at *6 (W.D. Wash. Mar. 14, 2007)). Accordingly, in determining whether the presumption of laches applies and may bar an action, the three-year

1   period of limitations "runs from the time the plaintiff knew or should have known about his

2   [trademark] cause of action." *Jarrow Formulas, Inc.*, 304 F.3d at 838.

3         Here, plaintiff alleges that it first learned that defendant "was contemplating naming the

4   New Facility 'the Children and Family Justice Center'" in late 2016, and that defendant only

5   announced its use of the Contested Marks in connection with the New Facility and its services in

6   February 2020. Dkt. 1, at 5. Defendant argues that "[r]egardless of whether [plaintiff] *knew* of

7   [defendant]'s actual use of the [Contested] Mark[s] by 'late 2016,' the [c]omplaint makes clear

8   that [plaintiff] at least *should have known* as much by then." Dkt. 14, at 16 (emphasis in

9   original). Thus, according to defendant, plaintiff should have filed its trademark claims within

10   the analogous three-year statute of limitations—no later than late 2019—yet, plaintiff failed to do

11   so. *See id.* at 17.

12         Plaintiff has raised an issue of fact, at least, as to when it should have known of

13   defendant's alleged violations. *See* Dkt. 1, at 5–6 ("In late 2016, [plaintiff] learned that

14   [defendant] was contemplating" using the Contested Marks, but defendant only "announced" use

15   of the marks "[i]n or around February 5, 2020."); Dkt. 21, at 16–17 ("Accepting [the] allegations

16   [in the complaint] as true . . . , it is evident that the 'clock' for the purposes of laches did *not* start

17   in 2016, when [defendant] was simply contemplating whether to use the [Contested] Marks in

18   commerce." (emphasis in original)). Therefore, defendant's motion should be denied on that

19   basis. *See Cervantes v. City of San Diego*, 5 F.3d 1273, 1276 (9th Cir. 1993) (Whether a claim is

20   time-barred is "more fact-specific and evidence-bound" and "not generally amenable to

21   resolution on a Rule 12(b)(6) motion.").

22         However, even assuming that plaintiff knew or should have known of defendant's alleged

23   infringing use of the Contested Marks by late 2016, and thus failed to file its claims within the

24

1  applicable limitations period, defendant has failed to argue that any delay in plaintiff's filing was

2  unreasonable or that it prejudiced defendant.  *See Jarrow Formulas Ltd.*, 304 F.3d at 835; *Eat*

3  *Right Foods Ltd.*, 880 F.3d at 1115, 1119 ("Even where a defendant establishes that a plaintiff

4  delayed unreasonably in filing suit, laches will not bar a claim unless that delay prejudiced the

5  defendant.").  Further, whether plaintiff's delay in filing was unreasonable and whether

6  defendant was prejudiced by the delay are disputed fact issues not appropriately addressed on a

7  Fed. R. Civ. P. 12(b)(6) motion to dismiss.  *See PTP OneClick, LLC v. Avalara, Inc.*, 413 F.

8  Supp. 3d 1050, 1066 (W.D. Wash. 2019) ("[I]t is rarely appropriate to grant a Rule 12(b)(6)

9  motion to dismiss . . . if equitable tolling is at issue." (internal quotation omitted)).

10  Accordingly, the Court recommends denying defendant's motion to dismiss Counts I and

11  III of the complaint as time-barred.

12  **IV.  Washington State Unfair and Deceptive Practices**

13  Finally, defendant argues, and plaintiff appears to concede, that Count II (unfair and

14  deceptive practices, RCW 19.86.020) of the complaint (Dkt. 1, at 8) should be dismissed with

15  prejudice because defendant is a municipal corporation not subject to suit under Washington's

16  Consumer Protection Act, RCW 19.86.010 *et seq.* ("WCPA").  *See* Dkts. 14, at 15; 21, at 9 n. 2.

17  The WCPA prohibits unfair methods of competition and unfair or deceptive acts or

18  practices of any trade or commerce.  *See* RCW 19.86.020.  However, claims brought pursuant to

19  RCW 19.86.020 may not be brought against a municipal corporation or political subdivision of

20  the state.  *See Witham v. Clallam Cty. Pub. Hosp. Dist. 2*, No. C09-5410RJB, 2009 WL 3346041,

21  at *7 (W.D. Wash. Oct. 15, 2009) ("municipal corporations are statutorily exempt from the

22  WCPA").

23

24

1  Defendant is a municipal corporation.  *See King Cty. v. Tax Comm'n*, 387 P.2d 756, 759

2  (Wash. 1963) ("[A] county is a municipal corporation, or at least a quasimunicipal corporation."

3  (citations omitted)).  Accordingly, defendant, as a municipal corporation, is exempt from suit

4  under the WCPA, RCW 19.86.020.  *Witham*, 2009 WL 3346041, at *7.  Therefore, the Court

5  should grant defendant's motion to dismiss Count II of the complaint with prejudice.

## CONCLUSION

7  For the reasons set forth herein, the Court recommends that defendant's motion to

8  dismiss (Dkt. 14) should be **GRANTED** in part and **DENIED** in part.  Plaintiff's claim under the

9  WCPA for unfair and deceptive practices should be dismissed with prejudice.

10  Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

11  fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P.

12  6.  Failure to file objections will result in a waiver of those objections for purposes of *de novo*

13  review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a result in a waiver

14  of those objections for purposes of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Miranda v.*

15  *Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted).  Accommodating the time limit

16  imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **January 29,**

17  **2021,** as noted in the caption.

18  Dated this 14th day of January, 2021.

J. Richard Creatura
United States Magistrate Judge